# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

*In the Matter Of:*          )
*H.M. Mosher Trust*          ) C.A. No. 2017-0653-SG
*Dated January 14, 1938*     )

## MEMORANDUM OPINION

Date Submitted: July 20, 2018
Date Decided: October 29, 2018

Peter S. Gordon and William M. Kelleher, of GORDON FOURNARIS & MAMMARELLA, PA., Wilmington, Delaware; OF COUNSEL: Alan T. Yoshitake and Patricia N. Chock, of SEYFARTH SHAW LLP, Los Angeles, California, *Attorneys for Petitioners*.

Jon E. Abramczyk, Todd A. Flubacher, and Matthew R. Clark, of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; OF COUNSEL: Robert N. Sacks and Matthew W. McMurtrey, of SACKS, GLAZIER, FRANKLIN & LODISE LLP, Los Angeles, California, *Attorneys for Respondent*.

GLASSCOCK, Vice Chancellor

This Memorandum Opinion resolves a petition for instructions, interpreting a trust (the "Trust") under California law. California, like Delaware, respects the intent of the settlor as expressed in the trust instrument, the plain language (if any) of which controls.[1] The language of the Trust at issue here is simple. It illustrates nicely that simplicity and clarity are not synonyms, and that the prolixity for which trust and will scriveners are often lampooned may be the mark of careful drafting, not careless verbosity.

Here, the Trust instrument provides that income is to be paid to settlor's children for life, then—absent exercise of a power of appointment—to settlor's grandchildren for life, and then "such portion of this trust estate to which [the grandchildren] would have been entitled shall go and be paid to their heirs at law, as determined by the laws of succession of the state of California relating to separate property then in force."[2] As used in this Memorandum Opinion, "heir" means "heir at law" under the terms of the Trust; that is, heir under the California law regarding intestate succession. The question presented here involves a great-great-grandchild of settlor Henry M. Mosher. Henry[3] had four children, each of whom was entitled to 1/4 of the income of the Trust. We are here concerned with the share of the

---

[1] Cal. Prob. C. § 21122 (1990).

[2] Pet'rs' Opening Br. in Support of Mot. for J. on the Pleadings, Ex. E, Declaration of Trust [Hereinafter, "Trust Instrument"], Art. 16.

[3] I use first names to avoid confusion; no disrespect is intended.

settlor's daughter Marjorie. Upon Marjorie's death, her only surviving child, Valerie, was entitled to receive the income formerly flowing to Marjorie. Valerie renounced this interest, which, under the language quoted above, passed to her four children, Mark, John, Craig, and Kent. Each of those great-grandchildren of Henry was entitled to 1/4 of the interest held by their grandmother, Marjorie. Mark has now died, leaving one child, Ashley, the great-great-grandchild of the settlor, Henry. The relationship is represented graphically below.



2

The dispute here is between Ashley, the Respondent, and the interests of her three uncles, John, Craig, and Kent, as advocated by the Petitioners, four of the five Managers of the H.M. Mosher Trust.[4] Ashley maintains that, just as her father Mark received 1/4 of Marjorie's interest upon Valerie's renunciation, as one of Valerie's four "heirs at law" Ashley is now entitled to the same interest as was Mark, because she is also Valerie's heir. Ashley points out that she and her three uncles are Valerie's heirs under California laws of succession, as called for in the Trust. Those laws provide for a surviving spouse's share, and direct the balance of the property to descendants *per stirpes*.[5] Under this scenario, she is the representative of one of the four stirpital lines descending from Marjorie, and she is entitled to 1/4 of the income from Marjorie's line; her uncles continue to be entitled to 1/4 each.

The Petitioners disagree. They point to the language of the Trust instrument: "after the death [or renunciation] of [Valerie] . . . then such portion of the income of this trust to which [Valerie] would have been entitled shall go to [Valerie's] heirs at law," but only for the life of those heirs.[6] According to the Petitioners, this means that, when any beneficiary receiving income through Valerie's line dies, that beneficiary's right to receive income lapses, and must be re-distributed to Valerie's

---

[4] Managers Dawn Aull, Ran Galt, Scott Shumway, and Samuel M. Williams filed this action. *See* Pet'n for Instructions re. Construction of Trust Instrument [hereinafter, "Pet'n"]. Neuberger Berman Trust Company is currently the acting successor Trustee. *Id.* ¶ 14.

[5] *See* Cal. Prob. C. §§ 240, 6401–02.

[6] Pet'rs' Opening Br. in Support of J. on the Pleadings, at 7.

heirs; thus, each uncle and Ashley are now entitled to 1/4 *of Mark's share*. Such a scheme would result in Ashley receiving 1/16 of the income from Marjorie's line, and her uncles each taking 1/16 *plus* their original 1/4—that is, 5/16—of Marjorie's line. While at present, the beneficiaries are entitled to Trust income only, the Trust terminates upon the death of the last of Henry's grandchildren, which, given the natural course of human events, approaches. At termination, the considerable corpus of the Trust will be distributed to the then-current beneficiaries in proportion to their entitlement to income.[7]

The matter is before me on cross-motions for judgment on the pleadings. Reading the Trust instrument as a whole, it is apparent that the settlor's intent was that (absent exercise of powers of appointment by his children or grandchildren) Henry's family was to benefit from a distribution of his bounty down stirpital lines, consistent with "the laws of succession of the State of California."[8] Nothing in the language suggests that Henry intended the bizarre result advocated by the Petitioners, with the Trust operating as a kind of tontine under which, by luck of timing, some lines of descent from Henry would benefit at the expense of others. Mark's right to receive income terminated upon his death. The Trust income is to be distributed to Valerie's living heirs. His daughter is an heir of Valerie, and under

---

[7] Trust Instrument, Art. 25.
[8] *Id.*, Art. 16.

California laws of succession, she is entitled to receive 1/4 of the income under the Marjorie line, as was her father. My reasoning is explained in more detail below.

## I.  BACKGROUND

I will recite in this Memorandum Opinion only those facts and Trust provisions necessary to my decision.

In 1938, Henry created the Trust that is at the heart of this dispute. The Trust provided that after Henry died, the Trust income would be paid in equal shares to each of his four children.[9] Upon the death of a child, that child's children would share in the Trust income.[10] Following the death of a grandchild, that grandchild's "heirs at law" would share in the Trust income.[11] The Trust terminates upon the death of the last of the named children and grandchildren; however, it also provides that if other grandchildren are born, "then such [grand]children shall share equally with the other [grand]children . . . and shall have the same rights as the other [grand]children."[12] At this time, there are, still living, named grandchildren of Henry, and so the Trust has not yet terminated. Upon termination, the corpus and the income will be divided between those entitled to receive Trust income in the proportion that they are receiving that income.[13] While the Trust does not use *per*

---

[9] *Id.*

[10] *Id.*  Both children and grandchildren had powers of appointment, not exercised here. *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*, Art. 25.  In 1983, the H.M. Mosher Trust was divided into separate trusts for each line of the then-existing income beneficiaries, pursuant to Article 3 of the Trust Instrument. Pet'rs'

*stirpes* language, it does say that it should be administered under the California laws of succession, which provide in part for stirpital distribution.[14]

Henry died in 1948,[15] and his daughter, Marjorie Mosher Schmidt, took a 1/4 share in the Trust income. When Marjorie died, her only surviving child, Valerie Schmidt Scudder, disclaimed her interest.[16] Accordingly, Valerie's four children, Mark, John, Craig, and Kent—the heirs of Henry's grandchild—each received 1/4 of Valerie's share in the Trust income.[17] Mark Scudder died on January 22, 2017, leaving one daughter, Ashley Scudder.[18] At that time, this disagreement arose between Ashley and the Managers regarding how Mark's share in the Trust interest should be distributed. Because of that disagreement, on September 8, 2017, the Managers filed a Petition for Instructions Regarding Construction of Trust Instrument.

---

Opening Br. in Support of Mot. for J. on the Pleadings, Ex. H, Trust Division and Management Agreement. This division is not relevant to the issues before me, and nothing in this Memorandum Opinion should be read as in conflict with the 1982 division of interests.

[14] Trust Instrument, Art. 16; Cal. Prob. C. §§ 240, 6401–02.

[15] Pet'n Ex. D, at 2.

[16] Pet'rs' Opening Br. in Support of Mot. for J. on the Pleadings, at 12; Resp.'s Answering Br., at 9.

[17] Pet'rs' Opening Br. in Support of Mot. for J. on the Pleadings, at 12; Resp.'s Answering Br., at 9.

[18] Resp't's Answer ¶ 1.

According to its terms, the Mosher Trust is governed by California law.[19] However, because its corporate trustee, Neuberger Berman Trust Company, is a Delaware entity, the Trust is administered in Delaware.[20]

The Mosher Trust has been the subject of previous litigation in California, *Wells Fargo Bank v. Williams*.[21] On April 22, 1996, then-trustee Wells Fargo Bank petitioned the California Superior Court for a determination that Marion Williams was not entitled to receive Trust income.[22] The facts of that case were as follows: Henry Mosher died in 1948, and at that time his son, Samuel, took a 1/4 share in the Trust income.[23] Samuel died in 1970, and his only child, his daughter Virginia, took Samuel's 1/4 income share in his place.[24] When Virginia died in 1978, her income share was divided between her husband Arthur and the couple's four children.[25] In 1982, Arthur remarried, to Marion Williams.[26] He continued to receive a share of the Trust income until his death in 1994.[27] After his death, then-trustee Wells Fargo informed Marion that she was entitled to receive Arthur's share in the Trust income

---

[19] Trust Instrument, Art. 16.

[20] Pet'n ¶ 4–6; Del. C. tit. 12, § 3340.

[21] In the California Superior Court, the case was titled *In The Matter of the H.M. Mosher Trust*; on appeal, the case was titled *Wells Fargo Bank v. Williams*. To avoid confusion, I refer to the California litigation as "*Williams*."

[22] See Pet'rs' Opening Br. in Support of Mot. for J. on the Pleadings, Ex. A.

[23] Pet'rs' Opening Br. in Support of Mot. for J. on the Pleadings, Ex. D, at 2.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

7

because she was Arthur's heir; however, two years later in 1996, Wells Fargo determined that the payments had been made in error.[28] It petitioned the California Superior Court for an interpretation of the Trust and for an order compelling repayment of the Trust proceeds that had been distributed to Marion.[29]

The California Superior Court found that Marion was not entitled to receive Trust income.[30] Instead, upon Arthur's death, his income was to be distributed to his and Virginia's four children, who were Virginia's heirs.[31] In upholding the Superior Court, the California Court of Appeal reasoned:

> [Marion] is not an intended beneficiary. The trust is unambiguous that only [Henry's] grandchildren's "heirs at law" are entitled to the trust income. . . . [Marion] is not Virginia's legal heir. In addition, [Henry's] intent was to benefit the "natural objects of his bounty." . . . [Marion] was a spouse of a spouse of a deceased grandchild. This is not an individual status recognized by the trust. . . . Under the trust, the only persons without [Henry's] blood in their veins who are entitled to share the trust income are the spouses of [Henry's] grandchildren.[32]

The Petitioners contend that *Williams* determines the outcome of this dispute. They submit that, because in that case, the California courts held that Arthur's interest passed to Virginia's heirs at the time of Arthur's death, so must Mark's interest pass to Valerie's heirs. Thus, per the Petitioners, Ashley is not entitled to the entirety of her father's share. Instead, Mark's share must be redistributed to

---

[28] *Id.*
[29] *See* Pet'rs' Opening Br. in Support of Mot. for J. on the Pleadings, Ex. A.
[30] Pet'rs' Opening Br. in Support of Mot. for J. on the Pleadings, Ex. B.
[31] *Id.*
[32] Pet'rs' Opening Br. in Support of Mot. for J. on the Pleadings, Ex. D, at 3–4.

Valerie's heirs as of the time of Mark's death.[33]  This would give Kent, Craig, and John each a total of 5/16 of Valerie's share in the Trust interest (that is, 1/4 of Valerie's share is their own, plus 1/4 of Mark's 1/4 share), while Ashley would receive 1/16 of Valerie's share.

The Respondent believes that Ashley is entitled to Mark's share in the Trust interest in its entirety.  The Respondent posits that *Williams* stands "only for the proposition that someone who is not an heir at law of a Grandchild may not receive distributions of Trust income."[34]  According to the Respondent, the settlor's intent must govern, and here, Henry's intent was that income interests pass to successive generations.[35]

Furthermore, the Respondent points to a series of letters from the former corporate trustee, Wells Fargo, as persuasive.  One such letter was written in 1996, in response to the *Williams* litigation but before the California court had decided that case.  In it, Wells Fargo's outside counsel wrote that, upon the death of a great-grandchild, that person's "interest would pass to that [person's] children and <u>not</u> to that [person's] spouse or the surviving children [of that spouse]."[36]  A second letter was written in 2002, after *Williams* was decided.[37]  Mark was preparing to marry for

---

[33] Pet'rs' Opening Br. in Support of Mot. for J. on the Pleadings, at 23–25.
[34] Resp't's Answering Br., at 22.
[35] *Id.* at 30.
[36] *Id.* at Ex. 4 (emphasis in original).
[37] Pet'n, Ex. F.

a second time, and he asked then-trustee Wells Fargo to confirm that only his daughter, Ashley, would receive his share in the Trust interest upon his death. Wells Fargo communicated to Mark, "should you die before termination of the Trust, your *entire interest* will pass to Ashley, if she survives you. If she does not survive you, your entire income interest would be redistributed among your three brothers."[38] Wells Fargo reaffirmed this position in a 2003 draft letter from its outside counsel addressed to the grandchildren and great-grandchildren of Henry.[39] According to the Respondent, this shows that her interpretation, that Ashley is entitled to receive the income her father formerly received, is reasonable. More importantly, it is persuasive to her argument that under the doctrine of equitable estoppel, the Trust fiduciaries cannot now assert a different position.[40]

On February 28, 2018, the Petitioners filed a Motion for Judgment on the Pleadings. On March 30, 2018, the Respondents filed a cross-Motion for Judgment on the Pleadings. I heard oral argument on July 20, 2018. This opinion resolves the parties' motions.

---

[38] *Id.* (emphasis added).
[39] Pet'n, Ex. F, Subex. D.
[40] Resp't's Answering Br., at 53–54.

10

## II. ANALYSIS

### A. *Standard of Review*

A motion for judgment on the pleadings may be granted only where no material issue of fact exists and the movant is entitled to judgment as a matter of law.[41] When deciding a motion for judgment on the pleadings, the court must accept as true all of the non-moving party's well pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party.[42] Cross-motions for judgment on the pleadings function "in a similar manner to cross-motions for summary judgment."[43]

The parties' cross-motions suggest that there is no dispute of material fact before me. However, the mere fact that the parties have both moved for judgment on the pleadings does not mean that the case will be resolved at this stage.[44] "The presence of cross-motions 'does not act *per se* as a concession that there is an absence of factual issues.'"[45] In order for judgment on the pleadings to be appropriate, "I must find that there is no factual dispute that would preclude an entry of summary judgment in this matter."[46]

---

[41] Ct. Ch. R. 12(c).

[42] *OSI Sys., Inc. v. Instrumentarium Corp.*, 892 A.2d 1086, 1089 (Del. Ch. 2006).

[43] *Silver Lake Office Plaza, LLC v. Lanard & Axilbund, Inc.*, 2014 WL 595378, at *6 (Del. Super. Ct. Jan. 17, 2014); *see also* Ct. Ch. R. 12(c).

[44] *Rag Am. Coal Co. v. AEI Res., Inc.*, 1999 WL 1261376, at *1 (Del. Ch. Dec. 7, 1999).

[45] *Anolick v. Holy Trinity Greek Orthodox Church, Inc.*, 787 A.2d 732, 738 (Del. Ch. 2001) (quoting *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997)).

[46] *Id.*

Under California law, a trust must be interpreted according to the "transferor's"—here, the settlor's—intent.[47] Where the trust is ambiguous regarding the transferor's intent, extrinsic evidence may be used.[48] The trust must also be construed as a whole.[49] The Trust here explicitly imports the "laws of succession of the State of California."[50] Section 6401(c) of the California Probate Code provides for the share of the survivor of an intestate spouse.[51] Section 6402 then provides the "laws of succession" referred to in the Trust instrument, as pertinent here:

> Except as provided in Section 6402.5, the part of the intestate estate not passing to the surviving spouse, under Section 6401, or the entire intestate estate if there is no surviving spouse, passes as follows:
>> (a) To the issue of the decedent, the issue taking equally if they are all of the same degree of kinship to the decedent, but if of unequal degree those of more remote degree take in the manner provided in Section 240.[52]

---

[47] Cal. Prob. C. § 21102. "Transferor" means the testator, settlor, grantor, owner, or other person who executes an instrument. § 81.

[48] § 21102.

[49] § 21121.

[50] Trust Instrument, Art. 16.

[51] Cal. Prob. C. § 6401 provides:
> (c) As to separate property, the intestate share of the surviving spouse is as follows:
>> (1) The entire intestate estate if the decedent did not leave any surviving issue, parent, brother, sister, or issue of a deceased brother or sister.
>> (2) One-half of the intestate estate in the following cases:
>>> (A) Where the decedent leaves only one child or the issue of one deceased child.
>>> (B) Where the decedent leaves no issue, but leaves a parent or parents or their issue or the issue of either of them.
>> (3) One-third of the intestate estate in the following cases:
>>> (A) Where the decedent leaves more than one child.
>>> (B) Where the decedent leaves one child and the issue of one or more deceased children.
>>> (C) Where the decedent leaves issue of two or more deceased children.

[52] § 6402. That statute provides, in full:

12

Section 240, in turn, calls for assets, such as the Trust property here, to be divided into "as many equal shares as there are living members of the nearest generation of issue then living *and* deceased members of that generation who leave

---

Except as provided in Section 6402.5, the part of the intestate estate not passing to the surviving spouse, under Section 6401, or the entire intestate estate if there is no surviving spouse, passes as follows:

(a) To the issue of the decedent, the issue taking equally if they are all of the same degree of kinship to the decedent, but if of unequal degree those of more remote degree take in the manner provided in Section 240.

(b) If there is no surviving issue, to the decedent's parent or parents equally.

(c) If there is no surviving issue or parent, to the issue of the parents or either of them, the issue taking equally if they are all of the same degree of kinship to the decedent, but if of unequal degree those of more remote degree take in the manner provided in Section 240.

(d) If there is no surviving issue, parent or issue of a parent, but the decedent is survived by one or more grandparents or issue of grandparents, to the grandparent or grandparents equally, or to the issue of those grandparents if there is no surviving grandparent, the issue taking equally if they are all of the same degree of kinship to the decedent, but if of unequal degree those of more remote degree take in the manner provided in Section 240.

(e) If there is no surviving issue, parent or issue of a parent, grandparent or issue of a grandparent, but the decedent is survived by the issue of a predeceased spouse, to that issue, the issue taking equally if they are all of the same degree of kinship to the predeceased spouse, but if of unequal degree those of more remote degree take in the manner provided in Section 240.

(f) If there is no surviving issue, parent or issue of a parent, grandparent or issue of a grandparent, or issue of a predeceased spouse, but the decedent is survived by next of kin, to the next of kin in equal degree, but where there are two or more collateral kindred in equal degree who claim through different ancestors, those who claim through the nearest ancestor are preferred to those claiming through an ancestor more remote.

(g) If there is no surviving next of kin of the decedent and no surviving issue of a predeceased spouse of the decedent, but the decedent is survived by the parents of a predeceased spouse or the issue of those parents, to the parent or parents equally, or to the issue of those parents if both are deceased, the issue taking equally if they are all of the same degree of kinship to the predeceased spouse, but if of unequal degree those of more remote degree take in the manner provided in Section 240.

13

issue then living."[53] The statute further provides that "each living member of the nearest generation of issue then living receiving one share and the share of each deceased member of that generation who leaves issue then living being divided in the same manner among his or her then living issue."[54] In other words, the California "laws of succession" provide descent *per stirpes.*

With these principles and statutory directions in mind, I turn to an analysis of the matter before me.

*B. Overview*

Occam's Razor is not a maxim of equity; it is a useful tool nonetheless. In addition, my analysis in this matter is simplified by the fact that the California Court of Appeal has interpreted the Trust, in a case pertinent here, discussed briefly above.[55] *Williams* involved entitlement to Trust income that passed from a grandchild of Henry's to the grandchild's widower, as her heir. The widower remarried, then died. Was *his* heir, his widow, entitled to receive Trust income after his death, despite the fact that the widow was not an heir of the grandchild through whom the widower's right to income devolved? The *Williams* court answered that question in the negative. [56] The parties disagree as to whether the case is persuasive

---

[53] § 240 (emphasis added).
[54] *Id.*
[55] Pet'n, Ex. D.
[56] *Id.*

14

precedent or binding law of the case here. I need not so decide, because in any event, I find the rationale as to settlor's intent and construction of the language of the Trust instrument, as laid out in *Williams*, to be correct, and follow it here.

As the court in *Williams* noted, the purpose of the Trust is to provide for Henry's blood descendants.[57] The Trust provided for Henry's four children to be equal life beneficiaries of the Trust income.[58] The Trust was to be treated as though each beneficiary benefited from a separate trust.[59] Assuming (as was the case in *Williams* and is the case here) a child of Henry's died without exercising a power of appointment, the income formerly enjoyed by the child was payable for life to that child's children, Henry's grandchildren, who also had a (here unexercised) power of appointment.[60]

Presumably to avoid the Rule Against Perpetuities, the Trust will terminate at the end of the life of Henry's last remaining grandchild; these grandchildren were living at the time the Trust was created, and are named in the Trust.[61] With the exception of the last-living grandchild, upon the death of a grandchild, the right to receive Trust income devolves on the heirs of the grandchild as provided by California law.[62] When the last grandchild dies, the Trust is to terminate, and the

---

[57] Pet'n, Ex. B.
[58] Trust Instrument, Art. 16.
[59] *Id.* Art. 3.
[60] *Id.* Art. 16.
[61] *Id.* Art. 16, Art. 19.
[62] *Id.* Art. 16.

15

corpus must be paid over to the life beneficiaries in the proportion by which they were receiving income just prior to termination.[63]

As described above, the question posed in *Williams* involved the death of a grandchild, upon which the right to income passed in part to her heir, her widower. The widower re-married, then died, leaving his widow as *his* heir. The *Williams* court found that the widower's interest was not heritable, but instead belonged to the heirs of Henry's grandchild.

The California Court of Appeal noted that the Trust provided that the widower's right to receive income terminated at his death. The widower "was entitled only to a lifetime share of the Trust income," and he could not dictate the ultimate beneficiaries of the Trust property.[64] The Trust instrument provided that the right to receive income was limited to the "heirs at law" of the grandchild. Marion Williams was an heir of the *widower*, but not an heir of a Mosher grandchild; thus, under the language of the Trust, she was not entitled to receive income. Moreover, the intent of the Trust was "to benefit the natural objects of [Henry's] bounty," his grandchildren and their spouses, and the descendants of his blood.[65]

---

[63] *Id.* Art. 16, Art. 19.
[64] Pet'rs' Opening Br. in Support of Mot. for J. on the Pleadings, Ex. D, at 4.
[65] *Id.* at 3.

This group did not include Marion Williams.  The widower's share thus went to "[the grandchild's] surviving legal heirs, her children."[66]

Applied here, the teachings of *Williams* are as follows:  Mark's right to receive income arose on the "technical death" of his mother, Valerie, via renunciation.  It terminated on his death.  The right to receive income through Valerie is provided by California law of intestacy, and the life beneficiaries provided by California law are Ashley, John, Craig, and Kent.

### C. Ashley is Entitled to the Income Share Formerly Enjoyed by Mark

The Petitioners interpret *Williams* to provide that upon the death of a life income beneficiary, that beneficiary's share reverts to the grandchild of Henry in their line, and is then redistributed to that grandchild's heirs through the statutes of descent.  Here, that would mean that Mark's interest would lapse back to Valerie, then pass under the statute to her heirs, the three uncles and Ashley, *per stirpes.* As a result, Ashley's share is 1/4 of the divested share formerly held by Mark; each uncle also takes 1/4 of that interest, *on top of* the interest they had already received upon Valerie's renunciation.  But this result is not mandated by the language of the Trust, which simply provides that upon each grandchild's death, the right to income vests in her heirs, for life. It is consistent with the Trust language to find that Valerie's heirs are defined by California law by the four stirpital lines, note that each

---

[66] *Id.* at 4.

stirpital line is headed by a single representative, and to vest Valerie's interest equally in the four, for life. In other words, the right to receive Trust income through Valerie, at any given time, is determined simply by reference to the right of heirs to her property under the "California laws of succession," as called for by the Trust instrument. In that case, Ashley is entitled to the income share formerly enjoyed by Mark.

In addition to being consistent with the language of the Trust, this interpretation is true to the intent expressed by the settlor, reading the Trust instrument as a whole. That intent was to provide life income for the settlor's named children and grandchildren, with the corpus then to be paid over to the grandchildren's heirs. The Trust explicitly adopts the California law of intestate succession, which (absent the spousal share addressed in *Williams*) imposes stirpital descent. In a stirpital scheme, each stirpital line receives the same bounty. Such equality, among the blood heirs of Henry, I find to be consistent with the Trust as a whole. It is clear that Henry's object was to benefit his children, grandchildren, and heirs generally. Children and grandchildren were treated equally. Holding, as the Petitioners urge, that each heir's individual share divests on death, then passes back, through the grandchild, to be redistributed to the grandchild's heirs, creates an absurd result—one that would benefit certain stirpital lines at the expense of others, based on progenitor longevity. This, to my mind, is inconsistent with the expressed

18

intent that distribution, post-grandchildren, was to heirs under the California law of succession.

Despite the Petitioners' argument to the contrary, Ashley's position is consistent with the California Court of Appeal's holding in *Williams*. *Williams* simply provides that upon the death of a life beneficiary, his interest must pass within the heirs of the grandchild of that line. It does not mandate that interests accumulate in some stirpital lines at the expense of others. The *Williams* case relies, as it must, on Henry's expressed intent, which I have found consistent with ensuring, upon the death of a life beneficiary, that the income benefit devolves on the heirs of the grandchildren of that line *per stirpes.* To hold otherwise would lead to results that are too removed from Henry's probable intent. If I were to accept the Petitioners' view, the potential result would be that in the future, Valerie's last living son will be entitled to nearly half of Valerie's Trust income, while each class of the deceased sons' descendants will receive varying amounts of income (with one class receiving less than ten percent). Upon termination of the Trust, this inequality would be perpetuated in the distribution of the corpus. There is no indication in the Trust instrument that Henry intended that the interests of his heirs be determined based on the fortuity of the relative lengths of the lives of their fathers and uncles.[67]

---

[67] The Respondent refers to this as the "death lottery approach." July 20, 2018 Hr'g Tr. 36:23–24.

19

To the contrary, it is more likely that Henry intended for his descendants to be treated equally, as contemplated under California laws of succession. As the California court discussed in *Williams*, Henry's intent was to provide for his family.[68] Moreover, in the Trust, Henry provided Trust income for life in equal proportion to each of his four children, which would subsequently be enjoyed by his children's children, and he included a provision so that unnamed grandchildren would be treated equally.[69] This evidences Henry's intent to treat his family members equally, and is aligned with Section 240 of the California Probate Code, which calls for division into equal shares.

Having treated the object of his bounty known to him—his living children and grandchildren—equally, it is unlikely that he lacked the intent to so treat his more remote descendants. Ashley is a lineal descendant of Henry, and the sole representative of her stirpital line. Under the Petitioners' reading of the Trust, however, Ashley would receive only a fraction of the Trust's interest income as compared to her uncles, the other stirpital representatives. I find that the Respondent's reading of the Trust—that Ashley, as Valerie's heir, takes the same

---

[68] Pet'n, Ex. B.
[69] *See* Trust Instrument, Art. 16.

interest enjoyed by her father during his life, and the same interest as the other stirpital representatives in Valerie's line—is in accord with Henry's likely intent.[70]

I note that the Respondent raised two equitable doctrines to support her position, equitable estoppel and unclean hands. Because, for reasons discussed above, I find that Ashley prevails based on the language of the Trust instrument and the law, I need not discuss these arguments. To do so, in any event, would likely require a more developed record.

## III. CONCLUSION

For the forgoing reasons, the Respondent's Motion for Judgment on the Pleadings is granted, and the Petitioner's Motion for Judgment on the Pleadings is denied. An appropriate form of order is attached.

Sincerely,

*/s/ Sam Glasscock III*

Vice Chancellor

---

[70] It is perhaps worth pointing out why Ashley's share is the same as that of her uncles, although she is at an additional remove of consanguinity from Valerie. Ashley, as Mark's only child, is the sole representative of her stirpital line. If she were one of five siblings, each would take 1/5 of the interest formerly enjoyed by their father Mark, as the benefits flowing down each line are divided equally among the heirs at that remove.

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| *In the Matter Of:* | ) | |
| *H.M. Mosher Trust* | ) | C.A. No. 2017-0653-SG |
| *Dated January 14, 1938* | ) | |

## <u>ORDER</u>

AND NOW, this 29th day of October, 2018,

The Court having considered the Petitioners' Motion for Judgment on the Pleadings, and the Respondent's Cross-Motion for Judgment on the Pleadings, and for the reasons set forth in the Memorandum Opinion dated October 29, 2018, IT IS HEREBY ORDERED that the Petitioners' Motion for Judgment on the Pleadings is DENIED and the Respondent's Motion for Judgment on the Pleadings is GRANTED.

SO ORDERED:

*/s/ Sam Glasscock III*

Vice Chancellor